THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| MILFORD WASHINGTON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No.: MJM-24-3219 |
| v. | * | |
| | * | |
| FEDERAL BUREAU OF PRISONS, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Self-represented plaintiff Milford Washington, who is incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland") and a practicing member of the Moorish Science Temple of America ("MSTA"), filed suit pursuant to the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb-1 to 2000bb-4, alleging that Defendants are violating his right to freedom of religious expression. ECF 1 (Complaint). Specifically, Washington alleges that he is prevented from wearing a Fez throughout the prison complex pursuant to a policy of the Bureau of Prisons, which permits the use of a Fez only for ceremonial purposes in the Chapel.[1] *Id.*

Defendants Federal Bureau of Prisons ("BOP"); Director William K. Marshall III;[2] Religious Services Assistant Shelly Rohrbaugh; retired Chaplain Bernard Buzulak; and Food

---

[1] Washington filed a Motion for Temporary Injunction together with his Complaint. ECF 3. Because Washington had subsequently been granted permission to wear his Fez throughout FCI-Cumberland, the motion was denied. ECF 33, 34. However, the issue remains as to whether the BOP's policy of prohibiting the wearing of Fezzes outside ceremonial rooms violates Washington's rights in that permission to wear his Fez could be revoked at any time.

[2] The Clerk will be directed to amend the docket to replace defendant Collette Peters with the current Director of the BOP, William K. Marshall III. *See* ECF 22 at 1, n.2.

Services Administrator Travis Schneider (collectively, "Defendants") filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 22. Washington opposes the motion, ECF 28, and Defendants replied, ECF 29.

Also pending are Washington's Motions for Monetary Damages, to Certify a Class, for Leave to File a "Surresponse," and for Discovery. ECF 30, 31, 32, 37. Defendants oppose the Motions for Monetary Damages and to Certify a Class. ECF 35, 36.

No hearing is required to resolve the matters pending before the Court. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, each parties' motions shall be denied.

## I.   BACKGROUND

### A.   Complaint Allegations[3]

As outlined in this Court's Memorandum addressing Washington's Motion for Temporary Restraining Order, ECF 33 at 2, Washington alleges that he is an adhering member of the MSTA. Compl., ECF 1. The Fez or Crown is religious headwear worn by members of the MSTA. *Id*. at 2. MSTA services at FCI-Cumberland are held in the Chapel twice per week, on Fridays and Sundays. *Id*. at 3. The Chapel is equipped with eight burgundy Fezzes. *Id*. at 3. Because he had observed members of other religious groups donning headgear throughout the prison complex, Washington was not aware of any restriction against wearing a Fez outside the Chapel. *Id*.

---

[3]   In addition to Washington's claim regarding his freedom to wear a Fez, the Complaint also generally mentions other potential violations of Washington's religious rights, including a lack of resources for the MTSA at FCI-Cumberland and the disparate allocation of resources as compared with adherents of other religions. Compl., ECF 1, at 3–4. Because the Complaint does not include sufficient details regarding these issues to state a claim and it seeks only injunctive relief related to the wearing of the Fez, the Court does not construe the Complaint as raising other claims beyond the claim regarding the Fez.

Additionally, because the Complaint seeks only injunctive relief, any potential claims against the individual defendants in their individual capacities, and their potential qualified immunity defenses, are not considered here.

Washington alleges that "[o]n March 22, 2024, during the 4 pm institutional count, Officer employee Rohrbaugh seized a Fez ('Crown') from [Washington]." *Id.* at 3.   After seizing Washington's Fez, Rohrbaugh informed him that "the Fez was not allowed to be removed from the chapel, and that the Fez was only authorized within the chapel during services." *Id.* at 4. Washington was subsequently informed by the FCI-Cumberland's Chaplain that BOP Program Statement 5360.10 provided that the Fez was authorized to be worn by MSTA adherents in the Chapel only as ceremonial headgear. *Id.* at 5.   Washington alleges that the BOP's policy violates his rights under RFRA and the Free Exercise Clause of the First Amendment. *Id.* at 6, 10.

### B.  Defendants' Motion

Defendants assert that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, that summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56.  ECF 22.  They argue that Washington's RFRA and Free Exercise Clause claims are moot,[4] there is a compelling interest in restricting the wearing of the Fez, Defendants have adopted the least restrictive means of furthering that interest, and the policy is reasonably related to legitimate penological interests.  ECF 22-1.  In support, Defendants submit the Declaration of Assistant Chaplain Shelly Rohrbaugh and the Declaration of Chaplaincy Administrator Heidi Kugler, as well as copies of BOP records.  ECF 22-2, 22-3, and 22-4.

The Declarations attached to Defendants' motion summarize relevant portions of the BOP policy at issue.  ECF 22-2 and 22-3.  BOP Program Statement 5360.10 states:

> An inmate ordinarily shall be allowed to wear or use personal religious items and ceremonial garments during religious services, ceremonies, and meetings in the Chapel, unless the Warden determines that the wearing or use of such items would threaten institution security, safety, or good order.  Upon request of the inmate, the Warden should allow the wearing or use of religious

---

[4] This Court has already determined that the claims are not moot.  *See* ECF 33 at 6.

> items throughout the institution, unless inconsistent with considerations of security, safety, or good order. The Warden may request the Chaplain to research whether the item or ceremonial garment sought is religious in nature. This research may involve consultation with representatives of the inmate's religion.

Rohrbaugh Decl., ECF 22-2 at 2–3 (citing BOP Program Statement 5360.10 at 11–12, and 28 C.F.R. § 548.16(b)). The Program Statement goes on to list several varieties of religious headwear that are approved for use "throughout the institution," and other headwear, to include the Moorish Fez, that is considered "ceremonial headwear" and permitted in the Chapel, but "are not worn to and from the Chapel or in any other area of the institution." *Id.*

## II.    STANDARD OF REVIEW

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed

4

factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that Washington is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). And the Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III.    ANALYSIS

### A.  Legal Background

It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).   However, a detainee or prisoner has a First Amendment right to free exercise of religion while in prison.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).

The RFRA provides "very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 693 (2014).  Under the RFRA, "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except . . . if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §§ 2000bb-1(a)–(b).  In analyzing a claim under the RFRA, the Court must consider whether the government's actions are the least restrictive means of serving a compelling government interest.  *Burwell*, 573 U.S. at 691.  "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system

of religious belief."  42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7).  A litigant's claimed beliefs "must be sincere and the practices at issue must be of a religious nature."  *Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002).

A substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or one that forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand[.]"  *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd.*, 4502 U.S. 707, 718 (1981), and *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).  To determine whether a plaintiff's exercise of religious beliefs is substantially burdened by a government action, the Court must not judge whether the plaintiff's beliefs "are mistaken or insubstantial," but "whether the line drawn reflects an honest conviction." *Burwell*, 573 U.S. at 724-25 (citation omitted).

Once a plaintiff has shown that his sincere religious belief has been substantially burdened, the government must show that its refusal to accommodate the exercise both furthers "a compelling governmental interest[]" and is the "least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §§ 2000bb-1(a)–(b).  In making this showing, the government cannot point only to "'broadly formulated interests'" but must "'demonstrate that the compelling interest test is satisfied through application of the challenged law [to] the particular claimant whose sincere exercise of religion is being substantially burdened.'"  *Ramirez v. Collier*, 595 U.S. 411, 427 (2022) (quoting *Burwell*, 573 U.S. at 682, and *Holt v. Hobbs*, 574 U.S. 352 at 363 (2015)). "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government."  *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009).  That burden is not satisfied

7

by simply citing to "security reasons" to justify a policy that substantially burdens a religious practice. *Id.* at 252; *see also Lovelace*, 472 F.3d at 190 (bare assertion of a legitimate interest without explanation is insufficient to satisfy burden). A challenged policy may be supported by a compelling governmental interest demonstrated through affidavits and exhibits. *See Couch v. Jabe*, 679 F.3d 197, 202 (4th Cir. 2012) (affidavit of warden citing specific health and security concerns supported policy prohibiting inmates from growing beards). However, the governmental defendants must also demonstrate that the policy at issue is the least restrictive means available to further the compelling governmental interests. *Couch*, 679 F.3d at 202. For example, a policy prohibiting inmates from growing beards that permitted a medical exemption but not one for religious belief was not the least restrictive means to accomplish the identified compelling interests when prison officials offered no explanation as to why a religious exemption would thwart that interest. *Couch*, 679 F.3d at 204.

## B. RFRA Claim

Defendants do not contest that Washington holds a sincere religious belief, but they argue that his beliefs are not substantially burdened by the BOP's policy of allowing Fezzes to be worn only in the Chapel, that the BOP has a compelling governmental interest in the security of the prison, and that the policy restricting Fezzes to the chapel is the least restrictive means of achieving that interest. ECF 22-1 at 15. Defendants note that Washington does not specifically allege that his belief includes wearing the Fez at all times. *Id.* at 17. They then state that "[e]ven assuming that is his sincerely held religious belief, Plaintiff has not sufficiently alleged or established that the sincerely held religious belief was substantially burdened by the BOP's restriction of the Fez to the Chapel." *Id.*

8

Defendants are correct that Washington does not specifically allege his sincere belief is to wear the Fez at all times.  But Defendants ignore the sincere beliefs that Washington does set forth and ignore the burden the policy imposes upon those beliefs.  Washington alleges that he is being prevented from "any idea of outward expression with the Fez."  Compl., ECF 1, at 8.  Washington avers that the prophet Noble Drew Ali "instructed his male followers to wear fezzes as an expression of the Moorish identity," and that "Moorish Americans of the old movement, proudly wear their fezzes for all the world to see."  Washington Decl., ECF 1-5, at 6.  Construing Washington's filings liberally supports a reasonable inference that Washington sincerely holds a religious belief in wearing the Fez "for all the world to see" and "as an expression of [his] Moorish identity."  BOP's policy imposes a substantial burden on this belief by ensuring that the Fez is only seen by other MSTA adherents during services.  As such, Washington has presented at least a plausible claim and genuine dispute that restricting his wearing of the Fez to the Chapel is a substantial burden on his sincere religious beliefs.

Upon Washington's showing that his sincere religious beliefs have been compromised, Defendants must show that the restriction furthers a compelling governmental interest and that it is the least restrictive means necessary to further that interest.  *See* 42 U.S.C. §§ 2000bb-1(a)–(b).  Defendants' motion fails to present sufficient evidence that these requirements of the RFRA are satisfied.  As to the compelling governmental interest, Defendants suggest that "because the Fez is a fairly large, tall headwear item," "the Fez could enable an inmate to conceal contraband, weapons, and/or illicit substances, all of which jeopardize the safety and security of a correctional institution," and that "prison staff would be required to perform searches of Fezzes, which would be time-consuming and impact the security and resource-efficiency of the institution."  ECF 22-1 at 19 (citing *Jefferson v. Gonzalez*, Civ. No. 05-442, 2006 WL 1305224 (D.D.C. 2006)).

Defendants do not present any evidence to support these statements. Instead, Defendants point to a document Kugler describes as "a copy of the BOP's MSTA Chapter from the Manual for Inmate Beliefs and Practices," which appears to be an outline of the purported beliefs and practices of the MSTA and includes the following: "Security note: Fezzes and lapel pins may be worn during services in the Chapel area only." ECF 22-3 at 5, 10. The Manual is not incorporated into Program Statement 5360.10 and provides no further information on the "security note," including the reason the Fez represents a security concern. *Id*. at 10.

Defendants' reliance on *Jefferson* is unavailing. ECF 22-1 at 19. *Jefferson* involved a RFRA and First Amendment challenge regarding a different type of headgear and a different religion—specifically, the use of turbans by Muslim inmates. 2006 WL 1305224, at *1–4. The *Jefferson* court found that the BOP met its burden of showing that it had a compelling interest in restricting Muslims' use of turbans for several reasons, including that turbans could conceal contraband, and there were 10,000 Muslims in BOP custody making regular searches untenable. *Id.* at *3–4. The BOP's position in *Jefferson* was supported by a declaration establishing the stated security risks associated with Muslim inmates' use of turbans. *Id*. Additionally, the restriction was found to be the least restrictive means of serving the relevant security interests because Muslims were permitted to wear alternative headgear in the form of a Kufi, and the turban policy had been implemented following consultation with Islamic scholars, who "uniformly stated to the BOP that a Kufi is an appropriate head covering for Muslim inmates." *Id*. Again, evidence supporting the court's determinations was presented to the court in the form of a declaration. *Id*. No similar evidence has been presented in the instant case.

Defendants argue that the Fez presents a security risk due based on the proposition that it can obscure contraband but offer no evidence to support this contention. They reference

Washington's statement that there are 21 members of the MTSA at FCI-Cumberland but, again, offer no evidence to support the proposition that permitting this number of inmates to wear Fezzes outside the Chapel would present a security risk or untenable burden if searches became necessary.

This Court notes that in *Marshall v. Corbett*, No. 3:13CV2961, 2019 WL 4736224, at *1 (M.D. Pa. Sept. 27, 2019), the U.S. District Court for the Middle District of Pennsylvania granted a preliminary injunction requiring the Pennsylvania Department of Corrections ("DOC") to permit the plaintiff, a member of the Nation of Islam ("NOI"), to wear a NOI Fez while incarcerated. Based on the preliminary record, the court found that the plaintiff "established [that] wearing a fez is a matter of religious freedom, and the restriction imposed by the DOC is not the least restrictive one that could be used to further the government interest in maintaining safety and security." *Marshall*, 2019 WL 4736224, at *4.  The court found that the defendants presented compelling governmental interests in their restrictions on use of the Fez based on "safety and security concerns[,]" specifically, that "[c]ontraband may be hidden under a fez." *Id.* at *3.  But the court rejected the defendants' argument that the challenged policy was the least restrictive means of serving the compelling governmental interests because "the fezzes could be searched to ensure that they are not concealing contraband." *Id.* at *4.  Defendants in the instant case, again, have offered no evidence, whether by affidavit or otherwise, to suggest searching Fezzes worn by MSTA members at FCI-Cumberland would be impracticable or undermine compelling interests in safety and security within the facility.

The U.S. District Court for the District of Connecticut recently considered a case challenging a restriction on MSTA members in the custody of the Connecticut Department of Correction from wearing Fezzes in prison due to an entirely different security reason. *Richard v. Strom*, No. 3:18-CV-1451 (VDO), 2025 WL 907559, *15–16 (D. Conn. Mar. 25, 2025).  In

*Richard*, all red-colored items and clothing, including Fezzes, were banned for purposes of controlling gang activity. *Id.* Notably, however, neutral-colored Fezzes were permitted to be worn throughout the facility, *id.*, suggesting the wearing of a Fez in general population did not present an insurmountable security issue.[5]

For his part, Washington provides photos of himself wearing his Fez and wearing his BOP-approved winter stocking cap, noting that they are of similar size. Washington Decl., ECF 1-5, at 32. Further, Washington states that he has never observed any BOP officer searching any inmate's head covering and argues that, to conduct a search, "the Fez can simply be taken off and flipped over[,]" in contrast to "toboggans" inmates are permitted to wear, which "can be rolled up and folded by the inmate." Pl. Opp'n, ECF 28, at 10–11. Defendants present nothing to refute Washington's suggestion that his Fez is no more a security risk than the commonly used winter hats and other religious head gear inmates are permitted to wear outside the Chapel.

In sum, Defendants have failed to meet their burden, and their motion to dismiss or for summary judgment on Washington's RFRA claim must be denied.

## C. First Amendment Claim

Washington's burden to state a plausible Free Exercise claim is more stringent. To state a claim for violation of rights under the Free Exercise Clause, a plaintiff must demonstrate: (1) a sincere belief in a religion; and (2) a prison practice or policy that places a substantial burden on the plaintiff's ability to practice that religion. *See Wilcox v. Brown*, 877 F.3d 161, 168 (4th

---

[5] Additionally, it appears that Fezzes are, or have been, permitted to be worn in Maryland state prisons. *See Calhoun-El v. Stouffer*, 2013 WL 5883348 (D. Md. October 28, 2013) (considering attestation of an Administrative Chaplain for North Branch Correctional Institution that while "there is no requirement in Moorish Science that adherents wear head coverings," "[m]any Moorish Science members, however, wear a cloth hat called a 'crown' or a red fez as a sign of their adherence.").

Cir. 2017).  A substantial burden is placed upon a prisoner's religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981).  Nevertheless, prison restrictions that impact First Amendment rights may be permissible if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 87, 91 (1987).  *Turner* sets forth

> a four-factor test to determine the reasonableness of a prison regulation:
>
>> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>>
>> (2) whether there are alternative means of exercising the right that remain open to prison inmates;
>>
>> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>>
>> (4) whether there are ready alternatives.
>
> *Greenhill* [*v. Clarke*], 944 F.3d [243,] 253 (4th Cir. 2019) (quoting *Turner*, 482 U.S. at 89–91...).

*Firewalker-Fields v. Lee*, 58 F.4th 104, 115 (4th Cir. 2023).[6]

---

[6] In *Firewalker-Fields*, the Fourth Circuit noted that the threshold showing of a "substantial burden" on a sincere religious practice "appears to be" outdated.  Without so holding, the court stated that "[a] more accurate application of the Supreme Court precedents in this area would look to whether the prison policy or regulation was 'neutral and generally applicable,'" and "[w]hen a policy or practice failed at that hurdle, then we would replace the traditional strict scrutiny test with the *Turner* analysis." *Firewalker-Fields*, 58 F.4th at 114 n.2.  As Washington has made a sufficient showing that the policy he challenges is a substantial burden on his religious practice to state a plausible RFRA claim and to present a genuine dispute in support of that claim, *see* Part III.B. *supra*, he meets either Free Exercise threshold requirement contemplated in *Firewalker-Fields*.

13

Unlike the standard under RFRA, the fourth factor of the *Turner* analysis places the burden of suggesting reasonable alternatives on the plaintiff; it is "not [the prison's] burden to imagine them." *Firewalker-Fields*, 58 F.4th at 118 (citing *Lane v. Griffin*, 834 F.2d 403, 407 n.5 (4th Cir. 1987) ("'It is improper to place the burden on a prison official to show that no reasonable method exists by which religious rights can be accommodated without creating bona fide security problems.'")).  The Fourth Circuit observes that the burden to "bring forward easy alternatives to the policy that burdens [plaintiffs'] religious practice" is "not insignificant." *Id*.  Nevertheless, here, Washington fails to suggest any specific alternatives to the policy he challenges, other than demanding that the MSTA Fez be treated the same as other religious headgear.

Washington states that he cannot present specific alternatives to the policy because he does not have a copy of Program Statement 5360.10, notwithstanding multiple attempts to obtain a copy of the policy.  Compl, ECF 1, at 5; Pl. Opp'n, ECF 28, at 11.  Defendants respond that he has a copy of Program Statement 5360.09, which includes the same policy as set forth in Program Statement 5360.10, and that "Plaintiff plainly knows what the Program Statement provides, at least with respect to the restriction of the Fez to the Chapel, because he initiated this lawsuit due to the restriction." ECF 22-1 at 24 n.12, 25.  Considering the parties' competing positions on this issue, the Court finds a genuine dispute as to whether there are ready alternatives to the policy Washington challenges and that summary judgment on his Free Exercise would be improper at this stage of the case. Defendants' motion is thus denied as to Washington's Free Exercise claim.

## IV.    PLAINTIFF'S PENDING MOTIONS

Also pending are Washington's Motion for Monetary Damages, ECF 30; Motion to Certify a Class, ECF 31; Motion for Leave to File a Surresponse, ECF 32; and Motion for Discovery ECF 37.

Washington's belated Motion for Monetary Damages seeks monetary damages related to the MSTA's lack of resources at FCI-Cumberland, not the issue of Washington's asserted right to wear his Fez at the facility. ECF 30. As the motion does not seek monetary damages regarding the only plausible claims for relief asserted in the Complaint, the motion is denied.

As to Washington's belated Motion to Certify a Class, ECF 31, the Complaint does not set forth the requirements for certifying a class pursuant to Federal Rule of Civil Procedure 23(a). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, the Fourth Circuit has consistently held that "this circuit does not certify a class where a pro se litigant will act as representative of that class." *Fowler v. Lee*, 18 F. App'x 164, 2001 WL 1033312 (4th Cir. 2001) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). This case cannot proceed as a class action without counsel. Therefore, the motion for class certification is denied.

Washington's "Motion for Leave to File a Surresponse" is denied. ECF 32. No party is permitted to file a surreply unless authorized by the Court. *See* Local Rule 105.2(a) (D. Md. 2025). A surreply is most commonly permitted when the moving party needs an opportunity to respond to matters raised for the first time in a reply. *See Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017) (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D.

Md. 2003)).  Washington does not explain why a surreply is necessary or appropriate.  Moreover, at this juncture, this motion is moot because Defendants' dispositive motion is denied.

Finally, Washington's Motion for Discovery is denied without prejudice.  ECF 37.  The motion seeks discovery related to numerous claims that are not at issue in this case.  *Id*.  However, Washington is not precluded from seeking discovery related to his claims regarding his claimed entitlement to wear a Fez at FCI-Cumberland.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF 22, is denied.  Washington's Motions for Monetary Damages, ECF 30; to Certify a Class, ECF 31; and for Leave to File a Surresponse, ECF 32, are denied.  Washington's Motion for Discovery, ECF 37, is denied without prejudice.  In consideration of Washington's status as an incarcerated litigant proceeding pro se, his prior request for appointment of counsel, and the expectation that this case will be proceeding to discovery, counsel will be appointed to represent Washington.[7]

A separate Order shall follow.

  3/19/26                                                             /S/
Date                                                              Matthew J. Maddox
                                                                  United States District Judge

---

[7] [D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted).  Based on Washington's filings to date, the nature of the claims, and the need for discovery, the Court determines that exceptional circumstances exist that warrant the appointment of an attorney to represent Washington under 28 U.S.C. § 1915(e)(1).